### CHARLESTON LAUNDRY CO. v. OHIO FARMERS INDEMNITY CO.

Civ. A. No. 1020.

United States District Court
S. D. West Virginia.

March 18, 1950.

Samuel D. Lopinsky, and Salisbury, Hackney & Lopinsky, Charleston, W. Va., Jackson D. Altizer, Charleston, W. Va., for plaintiff.

Steptoe & Johnson, Charleston, W. Va. (Robert W. Lawson, Jr., and Charles W. Yeager, Charleston, W. Va., of counsel), for defendant.

MOORE, District Judge.

This action is brought upon an insurance policy issued by defendant, covering motor vehicles of plaintiff. Trial was before the court and a jury on December 12, 1949. The jury returned a verdict in plaintiff's favor for $5,102.50, this being the amount sued for ($5,000), plus interest. Defendant moved for judgment *non obstante veredicto*. It is to this motion that the attention of the Court is now directed.

The policy in question covered a one year period. By its terms defendant agreed to pay on behalf of plaintiff all sums plaintiff should become legally obligated to pay because of bodily injury sustained by any person caused by an accident arising out of the operation of any of the vehicles named in the policy.

The policy contained what is commonly called a "notice clause," in the following language: "When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

It also contained a "cooperation clause," as follows: "The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *"

On November 24, 1948, while the policy was in effect, a truck owned by plaintiff and named in the policy was involved in an accident with a car owned and operated by one Meade Davis. W. E. Slaughter was the employee and regular route man to whom plaintiff's truck was assigned. Delbert Johnson, also employed by plaintiff as a route man, had, at Slaughter's request, gone with Slaughter in the truck that day, although it was Johnson's day off. At the time of the accident the laundry truck was being driven by Johnson, with Slaughter as a passenger. Slaughter and Davis were seriously injured in the collision, and Johnson received lesser injuries.

In reporting the accident to George A. Young, plaintiff's garage superintendent, Johnson and Slaughter both stated that Slaughter was driving the truck. This false information was also given by Slaughter to a member of the State police who investigated the accident, to defendant's adjuster, and to plaintiff's attorneys.

The normal procedure followed by plaintiff in case of an accident was that the driver would report the accident to Young. Young would then fill out an "Automobile Claim Report" form furnished to plaintiff by defendant. After Young completed the form it was customary that the driver sign the form, or that Young sign the driver's name, on the line captioned "Notice made out by." It was the duty of the drivers to report all accidents to Young, and it was Young's duty to fill out the form based upon information supplied by the driver, see that it was signed, and transmit it to defendant. In the instant case, Young filled out the form based on the information furnished him by Johnson and Slaughter (including the false statement, believed by Young to be true, that Slaughter was driving), signed Slaughter's name to the form, and sent it in to defendant.

Meade Davis brought suit in the State court against plaintiff and Slaughter for injuries received in the accident, and Slaughter brought suit there against Davis. The actions were consolidated. Plaintiff and defendant agree that at the time both felt there was a good chance to defeat the claim of Davis. A day or two prior to

the trial of the consolidated actions, attorneys for the insurance company ascertained that Johnson and Slaughter had made false statements as to who was driving the truck, and that Davis' attorney knew about such false statements. It was felt by counsel for both plaintiff and defendant that the two major witnesses for the laundry company and Slaughter would be so discredited at the trial that a settlement was desirable. Upon learning that Davis would accept $5,000 as settlement, plaintiff and defendant agreed that this amount be paid by one of them without waiver of the rights of either under the policy. Plaintiff paid the $5,000 to Davis, and then brought this suit in the State court. The case was removed to this court, with the result already stated.

Defendant contends that it is entitled to judgment on the facts as a matter of law, on the theory that the false statements by plaintiff's employees constituted a breach of either the notice clause or the cooperation clause of the policy (or both), so as to defeat recovery. Plaintiff takes the position that it was not bound by the false statements of Slaughter and Johnson; that these statements constitute no breach on its part of any condition of the policy; and that defendant is therefore bound by the policy, and must pay the agreed loss.

■■■ It seems obvious that an employer-assured does not, by accepting a policy of insurance containing a notice clause and a cooperation clause such as those we have here, warrant that its employees who may become involved in an accident will tell the truth about it, either on or off the witness stand. Every trial judge knows by sad experience that false swearing and false statements, far from being rare, are facts of daily occurrence in the progress of lawsuits. I cannot hold that an employer is to be left at the mercy of a false witness, with regard to the employer's right to recover under his liability insurance policy. If a false statement by an employee is to be effective as a defense to an action on the policy, it must have the following characteristics: (1) it must be imputable to the employer; that is, it must have been made by the agent in the per-

formance of his duty; (2) it must be violative of some express condition of the policy; (3) it must be prejudicial.

■■■ Defendant relies on the case of Black & White Cab Co. v. New York Indemnity Co., 108 W.Va. 93, 150 S.E. 521, to sustain its contention that the notice clause was breached. Clearly, if the Black and White rule is applicable to the facts of the instant case plaintiff cannot recover, since this court is bound to apply the West Virginia law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. On the other hand that rule, based as it is on a legal inference arising from the relationship of employer and employee, ought not to be extended by a further inference to include in its scope situations which are not strictly analogous.

Is the rule of the Black & White case applicable? It was shown in that case that it was the duty of the cab driver to report all accidents to the taxi company and fill out a form supplied by the insurance company, the taxi company then forwarding the form to the insurer. An accident occurred, which the driver neglected to report. Eleven months later, suit was instituted against the cab company, and the insurance company was notified. This was the first knowledge the insurance company had of the accident. The Court held that knowledge of an accident by an agent whose duty it is to report the accident to his principal is chargeable to the principal. Therefore, it was held that the cab company was charged with knowledge of the accident, and its failure to report it to the insurance company was a breach of the notice clause, and relieved the insurer from liability under the policy.

■■■ In the Black and White case no notice of any kind was given. In the instant case, notice was given as required by the policy, its only weakness being that it contained a false statement. This factual distinction makes the Black and White rule inapplicable. The object of the notice required by the notice clause is to acquaint the insurance company with the occurrence of an accident, so that it may make proper investigation, and take such action as may

be necessary to protect its interest. See 45 C.J.S., Insurance, § 982(1) p. 1182. Even when the policy requires notice "with full particulars," only such details need be included as will enable the insurer to determine whether a claim is likely to be made against the insured See 29 Am.Jur., p. 843. The notice given in the instant case satisfied these requirements. It contained a statement of the facts and circumstances surrounding the accident sufficient to inform defendant of the occurrence, and to enable it to pursue its investigation. Defendant could readily ascertain from the notice that a claim was likely to be made against plaintiff. It is true that the notice falsely stated that Slaughter was driving, when in fact Johnson was the driver; and, the report being made by Slaughter in line of duty, if this falsification could be said to be a violation of the notice clause, and prejudicial to defendant, it would relieve defendant from liability. But we have seen that the purpose of that clause in requiring notice is fulfilled when the insurance company is advised of the occurrence of the accident. Since it is unnecessary that any details of the accident be given in order to comply with the notice clause, then such details as may be set out in the notice, even though falsely related, are equivalent to mere surplusage. The notice as given complied substantially with the policy provisions and general requirements as to giving of notice. Such substantial compliance usually is sufficient. See 45 C.J.S., Insurance, § 1088, p. 1323. The one false statement made here did not, under the notice clause, invalidate the policy, since substantial compliance was effected, and the general requirements as to giving of notice satisfied. In short, I am of opinion that there was no breach of the notice clause.

This brings us to the question: Was there a breach of the cooperation clause? The problems in this connection are of somewhat greater complexity. Cooperation, as it relates to an insurance contract, means "that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." Ocean Accident & Guarantee Corp. v.

Lucas, 6 Cir., 74 F.2d 115, 117, 94 A.L.R. 1961, in which Judge Allen is quoting Justice Cardozo in Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443. This definition has been quoted with approval in many Federal decisions. The alleged failure to cooperate relied on by defendant must be confined to the false statement by Slaughter, contained in the notice of loss, that he was driving the truck at the time of the accident, since that was his only false statement which was made in line of duty. This presents the question whether a false statement in the notice of loss constitutes a breach of the cooperation clause. Defendant again relies upon Black & White Cab Co. v. New York Indemnity Co., supra, but I believe that case is not in point, since the defense therein relied on was that there had been a violation of the notice clause, whereas it does not appear from the opinion that the policy there in issue even contained a cooperation clause.

In considering this question, it may be helpful to state it in another way: Can an act required of the insured by the notice clause be assigned as a breach of the cooperation clause? I believe not. The purpose of the notice clause is only to assure that the insurance company has knowledge that a claim *may be* asserted. The cooperation clause is designed to protect the insurer against lack of cooperation by the insured in the defense of any claim covered by the policy, *and already asserted*. "Cooperation" means assistance given to the insurance company at its request. The assured is not required to cooperate until it has been asked to do something. American Surety Co. v. Sutherland, D.C., 35 F. Supp. 353, 358. This is readily seen from the definition set forth in the Ocean Accident case (quoted above) wherein the words "reasonably demanded" are used to describe the information which must be disclosed under the cooperation clause.

In the case of Rochon v. Preferred Accident Ins. Co. of New York, 118 Conn. 190, 171 A. 429, this question was discussed, and there the Court was of opinion that a false statement as to who was driving in the notice did not breach the cooperation

654

provisions of the policy. The theory of the Court, which I believe to be correct, was that cooperation refers to conduct of the insured subsequent to the notice, the obligation of the insured to give notice being independent of the duty to cooperate.

■ The false statement contained in the notice of loss was not made pursuant to any request by the defendant under the cooperation clause. It did not, therefore, constitute a failure to cooperate under that clause. I am of opinion that no breach of the cooperation clause has been shown.

■ Even assuming that the false statement in the notice of loss constituted a breach of the cooperation clause, still I think the policy was not avoided thereby. In State Automobile Ins. Co. v. York, 104 F.2d 730, at page 733, the Court of Appeals for this Circuit lays down the following rule: "It is well settled that, to relieve the insurer of liability on the ground of lack of cooperation, discrepancies in statements by the insured must be made in bad faith and must be material in nature *and prejudicial in effect.*" (Italics supplied.)

■ The false statement in the notice of loss was not what prejudiced the defendant. Other false statements were made by Slaughter and Johnson which were not imputable to the plaintiff, because not made in the line of their duties. The only imputable false statement was that contained in the notice of loss. I think it probable from the evidence that the statement made by Slaughter to the State trooper who investigated the accident when it occurred antedated Slaughter's report to the defendant, since the latter was based on information obtained from Slaughter by Young on the second day after the accident. Those statements to the State trooper were also false as to who was driving the plaintiff's truck. None of these false statements were per se prejudicial to the defendant, since the latter learned before trial that they were false. The prejudice lay in the fact that opportunity was afforded thereby for impeaching the credibility of Slaughter and Johnson as witnesses. In that respect, the harm was effectually done by the false statements to the State trooper, and was not added to by their repetition in the notice sent in by Young.

I am therefore of opinion that even assuming the cooperation clause to have been breached, the act which constituted the supposed breach did not result in prejudice to the defendant and does not prevent a recovery on the policy.

The motion is accordingly overruled. An order may be presented for entry in accordance with this opinion.